PD-0125-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 9/30/2015 4:37:14 PM
Accepted 10/1/2015 9:09:18 AM
ABEL ACOSTA
CLERK

## IN THE COURT OF CRIMINAL APPEALS
## OF TEXAS

| | | |
|---|---|---|
| **VERA ELIZABETH GUTHRIE-NAIL** | § | |
| APPELLANT | § | |
| | § | |
| v. | § | **No. PD-0125-14** |
| | § | |
| **THE STATE OF TEXAS,** | § | |
| APPELLEE | § | |

### STATE'S MOTION FOR REHEARING

**TO THE HONORABLE COURT OF CRIMINAL APPEALS:**

**COMES NOW**, the State of Texas, by and through Greg Willis, the Collin County Criminal District Attorney, and the undersigned attorney, and files this Motion for Rehearing, pursuant to Texas Rule of Appellate Procedure 79.1. In support of its motion, the State would show the following:

### SUMMARY OF ARGUMENT

I. This Court's conclusion that the record was ambiguous regarding whether the trial court intended to make or decline a deadly weapon finding does not address a crucial piece of evidence—the trial court's docket sheet—that prior precedent holds should be considered. The implication that the docket sheet was not considered merely because it was a computer printout sows confusion among the lower courts and should be clarified.

II. While a trial court may ordinarily have discretion to decline to make a deadly weapon finding, this discretion is sharply limited in a plea bargain. The trial court has no discretion to add or remove conditions in a plea-bargain agreement, and accordingly it has no discretion to decline to make a deadly weapon finding as contemplated by the plea bargain.

1

III. This Court's precedent holds that a trial court necessarily makes a deadly weapon finding when it finds the defendant guilty as alleged in the indictment if the indictment alleges a deadly weapon. Accordingly, a trial court must expressly indicate it is using its discretion *not* to make such a finding or one is made as a matter of law.

## STATEMENT OF THE CASE

The Dallas Court of Appeals affirmed the trial court's issuance of a judgment nunc pro tunc. *Guthrie-Nail v. State* ("*Guthrie-Nail I*"), No. 05-13-00016-CR, 2014 WL 61037, at *1 (Tex. App.—Dallas Jan. 8, 2014) (not designated for publication). This Court issued its opinion reversing and remanding the instant case on September 16, 2015. *Guthrie-Nail v. State* ("*Guthrie-Nail II*"), No. PD-0125-14, 2015 WL 5449642, at *1 (Tex. Crim. App. Sept. 16, 2015). This motion for rehearing is timely, being filed within fifteen days of the Court's judgment. Tex. R. App. P. 79.1.

## ARGUMENT & AUTHORITIES

This Court's opinion focused on the question of whether a trial court has discretion to decline to enter an affirmative finding of a deadly weapon. In deciding the issue, however, the Court's opinion inadvertently raised additional issues that must be clarified to provide guidance to the lower courts. The State requests this Court reconsider its opinion in this case.

**I. This Court failed to address the role of the docket sheet on its evaluation of the trial court's intent**

First, this Court failed to address a crucial piece of evidence in its evaluation, and in doing so sowed confusion among the lower courts regarding whether and to what extent electronic docket sheets may be considered by the appellate courts. The majority concluded that the record was ambiguous as to the trial court's original intention—while the finding of guilty "as set forth in the indictment" could support the view that the trial court intended to make a deadly weapon finding, the judgment notation of "N/A" might indicate that the trial court did not intend to make a deadly weapon finding. *Guthrie-Nail II*, slip op. at 9. But in declaring the record ambiguous, the Court omitted one other key piece of evidence relied upon by both the State and the Dallas Court of Appeals—the trial court's docket entry.

The trial court's docket sheet contains an entry on September 12, 2012, the date of the plea, reading:

> **Sentence** (Judicial Officer: Rusch, Mark)
> 2. Conspiracy to Commit Capital Murder by Terror Threat/Other Felony (Conspired)
> DC-Texas Dept of Criminal Justice – Prison
> Confinement to Commence 09/12/2012
> 50 years, TDC, Department of Corrections
> *Deadly Weapon Finding 42.12*

CR 26 (italics added). The State relied upon this docket entry in its original brief and post-submission letter-brief, and the Dallas Court of Appeals expressly

3

considered the docket entry as an indication of the trial court's intent at the time the plea was entered. *Guthrie-Nail I*, 2014 WL 61037, at *5 (finding the docket entry "further supports the State's contention that the trial court found that appellant used a deadly weapon during the offense").

Although not a substitute for a written order, a docket entry has previously been considered by this Court as "reliable as an indicator of the trial judge's decisions and the business of the court." *Stokes v. State,* 277 S.W.3d 20, 24-25 (Tex. Crim. App. 2009). And this Court has long held that a docket entry is a valid means of determining whether a judgment nunc pro tunc "was the judgment actually pronounced by the trial court when the case was tried." *Ferguson v. State,* 367 S.W.2d 695, 696 (Tex. Crim. App. 1963) (op. on reh'g). Thus, the docket sheet can and should be considered in order to resolve the ambiguity this Court found in the record.

But this Court did not address the docket entry at all in its analysis. In the majority opinion, the Court noted that the court of appeals partially relied on the docket entry in reaching its conclusion. *Guthrie-Nail II,* slip op. at 4. Yet in concluding the record was ambiguous, the majority only addressed the written judgment and the trial court's oral pronouncement. *Id.* at 9. It made no mention in its analysis of the docket entry or why the entry was not sufficient to overcome the ambiguity. However, the majority noted in its recitation of facts that the record

4

"contains what appears to be a computer printout of docket sheet entries." *Id.* at 3. Additionally, the concurrence expressed doubt that the docket entry could be considered because it was a computer printout rather than "a notation in the judge's handwriting." *Guthrie-Nail II,* Richardson, J., concurring, slip op. at 2. This leaves the lower courts to guess whether the docket entry was not sufficient because it was a computer printout rather than handwritten, whether it was insufficient for some other reason, or whether it was simply inadvertently omitted.

The simple dismissal of a docket sheet because it is a computer printout raises troubling concerns for courts around the state, both trial and appellate. May computer-generated docket sheets be considered at all? Must trial judges add some additional notations, such as initials or a signature, in order for an appellate court to consider it? With the rising prominence of paperless offices and electronic filing now authorized in certain criminal cases, electronic docket sheets will increasingly become the rule rather than the exception.[1] The majority opinion's failure to address the docket sheet, combined with the concurrence's expressed skepticism of it as a mere computer printout, leave the courts of this state uncertain of what may be considered or what is necessary to render electronic docket sheets legitimate in this Court's eyes.

---

[1] As evidenced by the record in this case, Collin County courts switched from handwritten docket sheets to wholly electronic ones in early 2012. *Compare* CR 4-5 *with* CR 6-19, 22-27.

Thus, the State asks this Court to reconsider its opinion and issue a new opinion either addressing the docket entry as an additional explanation of the trial court's intent or offering guidance to the lower courts regarding why the docket entry cannot be considered.

**II. This Court's holding that a trial court may decline to enter a deadly weapon finding does not apply to a plea bargain, which restricts a judge's discretion.**

Second, this Court's holding that a trial court has discretion to refuse to enter a deadly weapon finding failed to take into account that this case involved a plea bargain, which limits the trial court's discretion. A trial court ordinarily has great discretion at sentencing to issue any sentence within the statutory guidelines. However, when a case is resolved via plea bargain, the trial court's discretion is sharply limited. The trial court's only role in the plea-bargain process is advising the defense whether it will follow or reject the bargain struck between the parties. *Moore v. State,* 295 S.W.3d 329, 332 (Tex. Crim. App. 2009); Tex. Code Crim. Proc. art. 26.13(a)(2). Only the State may offer or withdraw a plea bargain, and accordingly "the trial court commits error if it unilaterally adds un-negotiated terms to a plea-bargain agreement." *Moore*, 295 at 332.

The existence of a deadly weapon finding is a significant one, as it considerably affects a defendant's eligibility for parole. Tex. Gov't Code § 508.145(d)(1); *Guthrie-Nail II*, slip op. at 3 (noting Appellant will not be eligible

6

for parole until she has served at least twenty-five years of her sentence if there is a deadly weapon finding). As such, it is an important issue to both parties in a plea-bargain process. Indeed, this Court has previously approved of plea-bargain agreements that included the trial court not entering a deadly weapon finding. *See Ex parte Minott,* 972 S.W.2d 760, 761 (Tex. Crim. App. 1998); *Ex parte Hairston,* 766 S.W.2d 790, 791 (Tex. Crim. App. 1989); *Ex parte Stephenson,* 722 S.W.2d 426, 428 (Tex. Crim. App. 1987); *Ex parte Hopson,* 688 S.W.2d 545, 547-48 (Tex. Crim. App. 1985); *Ex parte Garcia,* 682 S.W.2d 581, 582-83 (Tex. Crim. App. 1985).

A trial court's discretion in a plea-bargain scenario is limited to accepting or rejecting the plea bargain offered in the case. Here, Appellant entered into a plea bargain that, while it did not expressly call for a deadly weapon finding, included the exact language repeatedly approved of by this Court that necessarily amounts to a deadly weapon finding—that Appellant was pleading guilty "as alleged in the indictment" to an indictment that alleged a deadly weapon. CR 29, 30, 32; *see Ex parte Poe,* 751 S.W.2d 873, 876 (Tex. Crim. App. 1988). The trial court was free to accept or reject the plea bargain. It was not, however, free to add "un-negotiated terms" to the agreement. *See Moore*, 295 at 332. Thus, regardless of a trial court's ordinary discretion not to enter a deadly weapon finding, it did not possess that discretion in this case because it was a plea bargain. The trial court's nunc pro tunc

in this case accurately reflected the terms of the bargained-for sentenced and should be upheld.

**III. This Court should not conclude the trial court declined to make an affirmative finding of a deadly weapon absent an express statement**

Finally, even if the trial court had discretion to decline to make a deadly weapon finding, this Court should not conclude it did so absent an express statement. To hold otherwise contradicts decades of this Court's precedent and unnecessarily sows confusion about past cases.

This Court has long held that a verdict in certain circumstances constitutes an affirmative finding of a deadly weapon. In *Polk v. State,* this Court held that a jury's verdict that a defendant is guilty "as alleged in the indictment" constitutes an affirmative finding of a deadly weapon so long as the deadly weapon was alleged in the indictment. *Polk v. State,* 693 S.W.2d 391, 394 (Tex. Crim. App. 1985). It reaffirmed this conclusion three years later in cases where the trial court was the finder of fact. *Ex parte Empey,* 757 S.W.2d 771, 774 (Tex. Crim. App. 1988). And this Court has also found that a deadly weapon finding need not be orally pronounced by the trial court "if the allegation of use of a deadly weapon is clear from the face of the indictment." *Ex parte Huskins,* 176 S.W.3d 818, 821 (Tex. Crim. App. 2005). This Court's unwavering statement has been that an allegation of a deadly weapon in an indictment coupled with the trial court's verdict of guilty

as alleged in the indictment *is* a deadly weapon finding, regardless of whether it was orally pronounced.

If a trial court has discretion to decline to make a deadly weapon finding, as this Court concluded in the instant case, then this Court should require that it do so expressly, such as by stating when pronouncing sentence that no deadly weapon finding would be made.[2] Otherwise, this Court's long-standing precedent would hold that the deadly weapon finding was entered as a matter of law. To hold otherwise would effectively overrule the clear statement in *Huskins* than no oral pronouncement of a deadly weapon finding was necessary.

The majority relied on *Hooks v. State,* 860 S.W.2d 110 (Tex. Crim. App. 1993), to conclude that a trial court must be able to decline to make a deadly weapon finding. *Guthrie-Nail II,* slip op. at 8. But in *Hooks,* the question was whether a finding was *entered* onto the judgment. This Court made numerous distinctions between that situation and the questions in *Polk* and *Empey* regarding whether a finding had been *made*. *Hooks*, 860 S.W.2d at 113 (noting that "*making* finding is not *entering* affirmative finding; the trial judge must

---

[2] This Court makes much of the notation on the original judgment that the deadly weapon finding was "N/A," considering it an indication that the judge was declining to enter a finding. *Guthrie-Nail II,* slip op. at 9. However, a finding of "no" or "none" would be declining to enter a finding. "Not applicable" simply states that the deadly weapon issue was not applicable—which is not true because a deadly weapon was alleged here, and thus a finding can be yes or no but is certainly *applicable* to the case. A finding of "N/A" more likely demonstrates only that the trial court used a template judgment applicable to all cases, including those with no deadly weapon alleged, and did not update it to reflect *either* yes or no. At best, it is merely an ambiguous indication of refusing to make a finding, as the majority held, rather than an explicit statement.

9

enter *separate* and *specific* affirmative finding that deadly weapon was    used    or exhibited" to bar probation).

As this Court has held in *Polk, Empey, Huskins*, and numerous other cases, a deadly weapon finding is necessarily made when the indictment alleges a deadly weapon and the trial court finds the defendant guilty as alleged in the indictment. If the trial court intends to exercise the discretion contemplated by this Court in *Hooks* and the instant case, then it must do so expressly if it intends to override the finding that would otherwise be made as a matter of law. Because the trial court here did not expressly exercise that discretion, it necessarily made a deadly weapon finding, and that finding was properly added to the judgment via nunc pro tunc.

## PRAYER

**WHEREFORE**, premises considered, the State prays that this Court will grant its Motion for Rehearing, reconsider its opinion, and issue a new opinion addressing the above issues.

Respectfully submitted,

**GREG WILLIS**
Criminal District Attorney
Collin County, Texas

**JOHN R. ROLATER, JR.**
Assistant Criminal District Attorney
Chief of the Appellate Division

/s/ Andrea L. Westerfeld
**ANDREA L. WESTERFELD**

10

Assistant Criminal District Attorney
2100 Bloomdale Road, Suite 200
McKinney, Texas 75071
State Bar No. 24042143
(972) 548-4323
FAX (214) 491-4860
awesterfeld@co.collin.tx.us

## CERTIFICATE OF SERVICE

A true copy of the State's brief has been electronically served on counsel for Appellant, John Tatum, and a courtesy copy sent to jtatumlaw@gmail.com on this, the 30th day of September, 2015.

/s/ Andrea L. Westerfeld
Andrea L. Westerfeld

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limitations in Texas Rule of Appellate Procedure 9.4(i)(2). In reliance on the word count of the computer program used to prepare this brief, the undersigned attorney certifies that this brief contains 2,088 words, exclusive of the sections of the brief exempted by Rule 9.4(i)(1).

/s/ Andrea L. Westerfeld
Andrea L. Westerfeld